**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com

Attorneys for Movant Dr. Daniel P. Wirt

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DR. DANIEL P. WIRT**, | Case No. 3:21-mc-80166-KAW |
| Movant, | |
| v. | **RENEWED NOTICE OF MOTION AND MOTION TO COMPEL TWITTER, INC. TO RESPOND TO SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES** |
| **TWITTER, INC.**, | |
| Respondent. | (*Dr. Daniel P. Wirt v. John Doe aka @Deus_Abscondis*, pending in the United States District Court for the District of Utah, Case No. 4:21-cv-00005-DN-PK) |
| | Date:    TBD |
| | Time:    TBD |
| | Ctrm:    TBD |
| | Before:  TBD |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on a date and time to be set[1], before the Hon. Kandis A. Westmore, 1301 Clay Street, Oakland, CA 94612, Movant Dr. Daniel P. Wirt ("Movant" or "Dr. Wirt"), by and through counsel, will and hereby does move the Court for an order compelling Respondent Twitter, Inc. ("Twitter") to respond to Movant's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "Subpoena"). Petitioner is the Plaintiff in the case *Dr. Daniel P. Wirt v. John Doe aka @Deus_Abscondis*, Case No. 4:21-cv-00005-DN-PK, pending in the United States District Court for the District of Utah (the "Utah Action"), and issued the Subpoena in the Utah Action pursuant to Fed. R. Civ. P. Rule 45.

The Court should grant Movant's motion because Dr. Wirt has established his right to protect his proprietary interests and reputation through the assertion of recognizable claims based on the actionable conduct of the anonymous, fictitiously-named Defendant John Doe sufficient to permit him to unmask the identity of Defendant Doe through his Subpoena to Twitter. Further, Dr. Wirt has demonstrated a real evidentiary basis of the requisite degree of fault required to establish defamation *per se*, as well as the existence of harm to Dr. Wirt that outweighs the harm to Defendant John Doe from being identified.

This motion is brought pursuant to Federal Rule of Civil Procedure Rule 45(d)(2)(B)(i) and Local Rules 7-2, 37-1, and 37-2, and it is supported by this notice of motion and motion, the memorandum of points and authorities and supporting declarations filed concurrently herewith, the Complaint in the Utah Action, the files and records of this Court, and such oral argument and other matters as the Court may permit at the time of the hearing.

//

//

//

---

[1] Dr. Wirt is not noticing a hearing date based on the Court's prior representations on Dr. Wirt's original motion to compel that the Court would set a hearing if necessary.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    Respectfully Submitted,

2    DATED: October 18, 2021                    **KRONENBERGER ROSENFELD, LLP**

3

4    By:    s/ Karl S. Kronenberger
                                                        Karl S. Kronenberger

5

6    Attorneys for Movant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2   MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

3   INTRODUCTION ..................................................................................................................1

4   BACKGROUND & STATEMENT OF FACTS.......................................................................2

    DR. WIRT'S RESPONSE TO INDIVIDUAL OBJECTIONS .................................................4

5   MEET-AND-CONFER REQUIREMENTS..............................................................................6

6   STATEMENT OF THE ISSUES.............................................................................................6

7   ARGUMENT .........................................................................................................................7

8   I.   The Subpoena Satisfies Requirements Imposed by this Circuit on Litigants Seeking to
         Unmask Anonymouse Speakers ....................................................................................7

9        A.   Anonymous Speech is Protected by the First Amendment.........................................7

10       B.   Development of Standards for Determining When to Pierce Anonymity ...................9

11            1.   Emergence of the *Cahill* Standard ...................................................................10

              2.   The *Mobilisa* Standard ...................................................................................10

12            3.   The 9th Circuit Standard ..................................................................................11

13            4.   The Utah Standard ...........................................................................................11

14       C.   The Subpoena Satisfies the Utah and 9th Circuit Standard ....................................12

15            1.   The *Cahill* Standard ......................................................................................12

16            2.   The *Highfields* Standard ................................................................................13

                   a.   "Real Evidentiary Basis" .........................................................................14

17                 b.   Balance of Harm ......................................................................................15

18  CONCLUSION ....................................................................................................................16

19

20

21

22

23

24

25

26

27

28

i   **RENEWED NTC OF MTN AND MTN TO COMPEL TWITTER; MPA**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

# TABLE OF AUTHORITIES

**Cases**

*Art of Living. Art of Living Found. v. Does 1–10*, No. 10-CV-05022,
    2011 U.S. Dist. LEXIS 129836 (N.D. Cal. Nov. 9. 2011).................................................. 11, 15

*Awtry v. Glassdoor, Inc.*,
    2016 U.S. Dist. LEXIS 44804, at **43–44 (N.D. Cal. 2016)........................................... 14, 15

*Buckley v. Am. Constitutional Law Found.*,
    525 U.S. 182 (1999)....................................................................................................... 7, 8

*Columbia Ins. Co. v. Seescandy.com*,
    185 F.R.D. 573 (N.D. Cal. 1999) ......................................................................................... 9

*Dendrite Int'l, Inc. v. Doe No. 3*,
    775 A.2d 756 (N.J. Super. A.D. 2001) ........................................................................ *passim*

*Doe v. 2themart.com*,
    140 F. Supp. 2d 1088 (W.D. Wash. 2001)....................................................................... 8, 9

*Highfields Capital Mgmt., L.P. v. Doe*,
    385 F. Supp. 2d 969 (N.D. Cal. 2005) ........................................................................ *passim*

*In re Anonymous Online Speakers*,
    661 F.3d 1168 (9th Cir. 2011) ..................................................................................... 1, 15

*In re PGS Home Co.*,
    Case No. 19-mc-80139-JCS, 2019 U.S. Dist. LEXIS 204520, at *16 (N.D. Cal. Nov. 25, 2019)....16

*Independent Newspapers, Inc. v. Brodie*,
    407 Md. 415, 966 A.2d 432 (Md. Ct. App. 2009) .............................................................. 10

*John Bean Techs. Corp. v. B GSE Grp., LLC*,
    480 F. Supp. 3d 1274 (D. Utah 2020) .............................................................................. 14

*John Doe No. 1 v. Cahill*,
    2005 Del. LEXIS 381, *23, 884 A.2d 451 (Del. 2005) ................................................. 9, 10, 12

*Koch Indus., Inc. v. Doe*, Cause No. 2:10CV1275DAK,
    2011 U.S. Dist. LEXIS 49529, *27 (D. Utah. May. 9, 2011)............................................ 11, 12

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334 (1995)............................................................................................................ 7

*Mobilisa, Inc. v. Doe*,
    217 Ariz. 103 (Ariz. Ct. App. 2007) ........................................................................ 9, 10, 11

*Music Grp. Macao Commercial Offshore Ltd. v. Does*,
    82 F. Supp. 3d 979 (N.D. Cal. 2015) ................................................................................ 14

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964)............................................................................................................ 8

*Reno v. ACLU*,
    521 U.S. 844 (1997)............................................................................................................ 8

*Rusk v. Fid. Brokerage Servs., LLC*, Case No. 2:15-cv-853-JNP,

Kronenberger Rosenfeld, LLP
150 Post Street, Suite 520 San Francisco, CA 94108

2018 U.S. Dist. LEXIS 55004, at *17 (D. Utah Mar. 29, 2018)................................... 14

*Savage v. Pac. Gas & Elec. Co.*,
   21 Cal. App. 4th 434, 26 Cal. Rptr. 2d 305 (1993)...................................... 14

*Solers, Inc. v. Doe*,
   2009 D. C. App LEXIS 342, *31, 977 A.2d 941 (D.C. 2009)..................................... 10

*Sony Music Entm't v. Does 1–40*,
   326 F. Supp. 2d 556 (S.D.N.Y. 2004)................................................. 8, 9

*Symthe v. Does*,
   2016 U.S. Dist. LEXIS 1348, at **8–9 (N.D. Cal. Jan. 5, 2016) ..................... 14

*Talley v. California*,
   362 U.S. 60 (1960)................................................................ 7

*USA Techs., Inc. v. Doe*,
   713 F. Supp. 2d 901 (N.D. Cal. 2010) ........................................... 1, 15

*West v. Thomson Newspapers*,
   872 P.2d 999 (1994).............................................................. 12

*World Wide Ass'n of Specialty Programs v. Pure, Inc.*,
   450 F.3d 1132 (10th Cir. 2006) ................................................. 13

**Statutes**

18 U.S.C. §§2701.................................................................... 4

**Rules**

Fed. R. Civ. P. Rule 45 .......................................................... 1, 6
Utah R. Civ. P. 56(c).............................................................. 12

iii

**RENEWED NTC OF MTN AND MTN TO
COMPEL TWITTER; MPA**

**MEMORANDUM OF POINTS AND AUTHORITIES**

Movant Dr. Daniel P. Wirt, Plaintiff in the case *Dr. Daniel P. Wirt v. John Doe aka @Deus_Abscondis*, Case No. 4:21-cv-00005-DN-PK, pending in the United States District Court for the District of Utah (the "Utah Action"), moves the Court to compel Respondent Twitter, Inc. ("Twitter") to respond to Dr. Wirt's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "Subpoena"). Twitter's response to the Subpoena is necessary for Dr. Wirt to identify the anonymous Defendant in the Utah Action so that Dr. Wirt may pursue his claim for defamation and related claims. Further, Dr. Wirt has demonstrated a real evidentiary basis of the requisite degree of fault required to establish defamation *per se*, as well as the existence of harm to Dr. Wirt that outweighs the harm to Defendant John Doe from being identified.

**INTRODUCTION**

Under the law of this Circuit, the First Amendment does not protect tortious, defamatory, or libelous speech, anonymous or otherwise. *USA Techs., Inc. v. Doe*, 713 F. Supp. 2d 901, 906 (N.D. Cal. 2010); *see also In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) ("The right to speak, whether anonymously or otherwise, is not unlimited, however, and the degree of scrutiny varies depending on the circumstances and the type of speech at issue."). Here, the anonymous speech at issue constitutes defamation *per se*. Therefore, the Court should enforce the subpoena which would reveal the identity of the anonymous speaker.

In September 2020, Dr. Wirt became engaged in a heated debate with a Twitter user by the handle @Deus_Abscondis. As the debate went on into October 2020, @Deus_Abscondis began publishing false and defamatory statements about Dr. Wirt, including that he was a known felon who had been in prison for fraud. (Declaration of Karl S. Kronenberger in Support of Renewed Motion to Compel ("Kronenberger Decl.") ¶2 & Ex. A.) These statements are false statements of fact. (Declaration of Dr. Daniel P. Wirt in Support of Renewed Motion to Compel ("Wirt Decl.") *passim*.) Dr. Wirt filed suit in the District of Utah on January 14, 2021, bringing causes of action against John Doe ("Doe"), as the anonymous speaker behind the @Deus_Abscondis account.

Dr. Wirt previously filed a Motion Compel Twitter to respond to the Subpoena, which the

1

Court denied without prejudice to refiling on September 27, 2021. The Court denied Dr. Wirt's motion based on two prongs of the *Highfields* test that were unmet: (1) the requirement for a "real evidentiary basis" for Dr. Wirt's claims rather than solely based on the pleadings; and (2) the requirement for the balance of harm, specifically that Dr. Wirt had identified no harm, stating, "While a plaintiff may not need to establish harm to bring a defamation per se claim, Wirt must still identify some harm that would be greater than the harm to @Deus_Abscondis." *See* Order of September 27, 2021, at ECF Doc. #10.

In denying Dr. Wirt's Motion without prejudice, the Court allowed Dr. Wirt to file the instant renewed motion in order to cure these deficiencies. As delineated below, Dr. Wirt reasserts his original motion and brings addition evidence to alleviate the deficiencies identified by the Court in its September 27, 2021 Order.

Dr. Wirt moves to enforce his Subpoena served on Twitter that seeks information to reveal the identity of the Defendant, the user behind the @Deus_Abscondis account ("Twitter Account"). The Subpoena makes specific requests for information related to the Defendant. While the Defendant possesses a First Amendment right to anonymous speech on the internet, this Motion provides a basis to warrant this Court to allow discovery of Doe's identity. For these reasons, and for the reasons more fully articulated below, this Court should enforce the Subpoena to Twitter.

## BACKGROUND & STATEMENT OF FACTS

On January 14, 2021, Dr. Wirt filed his Complaint in the United States District Court for the District of Utah. (Kronenberger Decl. Ex. A.) The Complaint alleges causes of action against John Doe, the account holder for the Twitter handle @Deus_Abscondis, for defamation *per se* and false light. The foundation of these claims are the defamatory statements made by Doe which include several false statements, but one in particular stands out wherein Doe links Dr. Wirt to a known felon who was convicted of fraud; Defendant states: "He dropped the 'h'. Now it makes sense – 'In 2004, it was announced that Wirth together with one of his co-workers had been arrested and later imprisoned for fraud." (Kronenberger Decl. Ex. A.) Doe then linked to an article about the crime. (Kronenberger Decl. Ex. A.) This statement is a false statement of fact, as Dr. Wirt has never been charged with or convicted of a crime. (Wirt Decl. ¶9.)

2

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

On January 26, 2021, Dr. Wirt filed a Motion for Leave to Conduct Limited, Expedited Discovery. (Kronenberger Decl. ¶3 & Ex. B.) On January 27, 2021, the court granted Dr. Wirt's motion, ordering:

Plaintiff may proceed with limited, expedited discovery with respect to third parties likely to have information tending to identify Defendant as follows:

(a) Plaintiff is authorized to cause subpoenas to be served on Twitter, Inc. solely to obtain identifying and contact information (Internet Protocol ("IP") address(es) and email address(es)) associated with Defendant's Twitter account @Deus_Abscondis. This Order does not preclude Twitter, Inc. from challenging the merits of any subpoena.

(b) Upon obtaining Defendant's IP address(es) or email address(es), Plaintiff is authorized to cause subpoenas to be served on the third party Internet Service Provider(s) ("ISPs") associated with the IP address(es) and email address(es) solely to obtain identifying and contact information of the registered owner or subscriber of the IP address(es) and email address(es). This Order does not preclude the third party ISPs from challenging the merits of any subpoena.

(c) Twitter, Inc. and the subpoenaed third party ISPs shall preserve any and all responsive evidence and information to the subpoenas until further Order of this court.

(d) Twitter, Inc. and the subpoenaed third party ISPs shall provide notice to Plaintiff's counsel that the responsive information has been preserved.

(e) Plaintiff shall provide notice to Defendant, through Defendant's account(s), email address(es), and pseudonym(s), if known, within two (2) days after obtaining notice from Twitter, Inc. and all subpoenaed third party ISPs that responsive information has been preserved.

(Kronenberger Decl. ¶3 & Ex. C.)

On March 30, 2021, Dr. Wirt served a subpoena on Twitter's agent via hand delivery. (Kronenberger Decl. ¶4 & Ex. D.) The notice contained a copy of the Subpoena that seeks personal identifying information related to a user account hosted by Twitter believed to have been created by Doe. *See id*. The Subpoena provided a deadline of April 26, 2021, by which Twitter must comply. *See id*.

On April 12, 2021, Twitter served its objections ("Objections") to the Subpoena via letter. (Kronenberger Decl. ¶5 & Ex. E.[2]) Based on its Objections, Twitter indicated that it would not be

---

[2] Dr. Wirt previously served a subpoena on Twitter and Twitter responded with similar objections in addition to an objection to the manner of service. (*See* February 8, 2021, Subpoena attached to Kronenberger Decl. as Exhibit F and Twitter's February 22, 2021, Objection Letter attached to

3

1   producing responsive information, thereby precipitating the necessity of this motion.

2   **DR. WIRT'S RESPONSE TO INDIVIDUAL OBJECTIONS**

3   First, Twitter objects that the Subpoena calls for the disclosure of communications between

4   Twitter and the user in violation of Stored Communications Act, 18 U.S.C. §§2701, *et seq*. ("SCA").

5   (Kronenberger Decl. Ex. E.) Regarding this objection, Dr. Wirt does not intend to seek disclosure

6   of the contents of communications between Doe and Twitter and agrees with Twitter's position to

7   withhold such information.

8   Second, Twitter objects that the requests are vague and ambiguous and states that "all legal

9   process must properly identify the Twitter account at issue by providing the @username and/or

10  URL of the subject Twitter account in question." (Kronenberger Decl. Ex. E.) Regarding this

11  objection, Dr. Wirt's subpoena specifically identifies the account username @Deus_Abscondis, and

12  provides the URL of each posting at issue by such user. (Kronenberger Decl. Ex. D at Request No.

13  1.) Dr. Wirt does not intend to seek disclosure of information beyond that which pertains to this

14  user and the identified posts and thus believes this objection to be moot.

15  Third, Twitter objects that Dr. Wirt's request for "additional Twitter Accounts, Twitter

16  Usernames, and/or Tweets" is overbroad. (*See* Kronenberger Decl. Ex. E.) Regarding this objection,

17  Dr. Wirt agrees to narrow his Subpoena requests to encompass only information which would allow

18  or aid in identifying Defendant John Doe, including the IP Addresses from which the offending

19  posts were made and the email, emails, or other information used by Doe when registering for his

20  account using the handle @Deus_Abscondis. This information is directly relevant to Dr. Wirt's

21  claims and is needed so that he can pursue his claims.

22  Fourth, Twitter objects that Dr. Wirt did not provide documentation that the Utah court had

23  "considered and imposed the First Amendment safeguards required before a litigant may be

24  permitted to unmask the identity of an anonymous speaker." (Kronenberger Decl. Ex. E.)

25  Specifically, Twitter stated that "the trial court must strike a balance 'between the well-established

26

27  Kronenberger Decl. as Exhibit G). Therefore, Dr Wirt re-served the Subpoena in the manner stated
    by Twitter. (*See* Kronenberger Decl. Ex. D.) Twitter then responded with its second objection letter.

28  (*See* Kronenberger Decl. Ex. E.)

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

First Amendment right to speak anonymously, and the right of the plaintiff to protect its proprietary interests and reputation through the assertion of recognizable claims based on the actionable conduct of the anonymous, fictitiously-named defendants.'" (Kronenberger Decl. Ex. E (*quoting Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756, 760 (N.J. Super. A.D. 2001)). Regarding this objection, Dr. Wirt sets out in detail below his position and requests that the Court make the necessary inquiry to warrant the unmasking of this anonymous Defendant.

Fifth, Twitter objects that Dr. Wirt's Subpoena seeks deleted content. (*See* Kronenberger Decl. Ex. E.) Regarding this objection, Dr. Wirt agrees to narrow his Subpoena to exclude deleted content which is not readily accessible by Twitter without having to be restored. Again, Dr. Wirt seeks only information which would allow or aid in identifying Defendant John Doe, including the IP Addresses from which the offending posts were made and the email, emails, or other information used by Doe when registering for his account using the handle @Deus_Abscondis. This information is directly relevant to Dr. Wirt's claims and is needed so that he can pursue his claims.

Sixth, Twitter objects to Request No. 4 as vague and ambiguous to the extent that it calls for documents sufficient to identify "the Customer Email Address(es) associated with the Tweets provided in Request 1 and/or the Twitter Account identified in response to Request 1." (Kronenberger Decl. Ex. E.) Regarding this objection, Twitter is in the best position to know how it keeps records of its users' email addresses and other identifying information. Dr. Wirt seeks only information which would allow or aid in identifying Defendant John Doe, including the IP Addresses from which the offending posts were made and the email, emails, or other information used by Doe when registering for his account using the handle @Deus_Abscondis. This information is directly relevant to Dr. Wirt's claims and is needed so that he can pursue his claims.

Seventh, Twitter objects to Dr. Wirt's definition of "Twitter" as overbroad to the extent that it may seek documents protected by the attorney-client privilege. (*See* Kronenberger Decl. Ex. E.) Regarding this objection, Dr. Wirt agrees to narrow his requests to seek only non-privileged information.

Eighth, Twitter objects to Dr. Wirt's Subpoena to the extent that it "imposes any obligations with respect to the production of electronically stored information that is different from or in

addition to those imposed by the Federal Rules of Civil Procedure." (Kronenberger Decl. Ex. E.) Twitter then lists possible ways the information sought might impose an obligation outside those imposed by the Federal Rules of Civil Procedure. (*See* Kronenberger Decl. Ex. E.) Regarding this objection, Dr. Wirt does not seek to impose any obligation on Twitter which would be greater than that imposed by the Federal Rules of Civil Procedure. Dr. Wirt seeks only information as noted above to identify or aid in the identification of Doe. This information should be readily available to Twitter.

Ninth, Twitter objects to the Order from the District of Utah to the extent that Twitter was not given notice or an opportunity to be heard. (*See* Kronenberger Decl. Ex. E.) By way of this motion, Dr. Wirt seeks to afford Twitter that opportunity.

Tenth, Twitter objects that "[t]he underlying court lacks jurisdiction over Twitter, and under Federal Rule of Civil Procedure 45(d), all disputes must be resolved in the Northern District of California, where compliance is required by Twitter." (Kronenberger Decl. Ex. E.) By way of this motion, Dr. Wirt seeks to address Twitter's jurisdictional objection.

Eleventh, Twitter objects that "Twitter does not read the Order as precluding Twitter from giving notice if the requested information has been preserved." (Kronenberger Decl. Ex. E.) Regarding this objection, Dr. Wirt does not believe that Twitter must refrain from giving notice to its user.

Except for Twitter's Fourth objection addressed in detail below, Dr. Wirt submits that each of Twitter's objections have been addressed and the requested information in Twitter's possession which would identify or aid in the identification of Doe should be produced.

## MEET-AND-CONFER REQUIREMENTS

On July 7, 2021, Dr. Wirt's counsel in the Utah Action sent an email to Twitter's legal response team at the email address Twitter used to send its objections to the Subpoena, responding to each of Twitter's objections as set forth above, in an attempt to resolve the issues presented in the instant Motion to Compel pursuant to Local Rule 37-1(a). (Kronenberger Decl. ¶7 & Ex. H.)

## STATEMENT OF THE ISSUES

1.    Has Dr. Wirt established his right to protect his proprietary interests and reputation

6

**RENEWED NTC OF MTN AND MTN TO COMPEL TWITTER; MPA**

through the assertion of recognizable claims based on the actionable conduct of the anonymous, fictitiously-named Defendant John Doe sufficient to permit him to unmask the identity of Defendant Doe through his Subpoena to Twitter?

## ARGUMENT

### I.     The Subpoena Satisfies Requirements Imposed by this Circuit on Litigants Seeking to Unmask Anonymous Speakers.

The Subpoena meets the applicable standard for determining when an anonymous speaker's identifying information may be disclosed. Where litigants seek information about individuals engaged in anonymous or pseudonymous speech online, courts within the Ninth Circuit have adopted the *Highfields* standard, which is very similar to the *Dendrite* standard. The Utah courts have likewise adopted the *Dendrite* standard, which was modified by the court in *Cahill*. The Subpoena meets each of these standards and the more rigorous standard, the *Cahill* standard, for disclosing an anonymous individual's identifying information and therefore, Dr. Wirt contends that this Court should enforce the Subpoena. As delineated below, based on the claims and circumstances in the underlying matter, this Court will be able to enforce the Subpoena to unmask Doe while striking a balance "between the well-established First Amendment right to speak anonymously, and the right of the plaintiff to protect its proprietary interests and reputation through the assertion of recognizable claims based on the actionable conduct of the anonymous, fictitiously-named defendants." *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756, 760 (N.J. Super. A.D. 2001). Thus, this Court can sufficiently address Twitter's First Amendment objection and ultimately allow the disclosure of identifying information so that Dr. Wirt can proceed against Doe in his underlying litigation.

### A.     Anonymous Speech is Protected by the First Amendment.

The First Amendment protects the right to speak anonymously. *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 200 (1999); *Talley v. California*, 362 U.S. 60, 65 (1960). The Supreme Court has stated that "[a]nonymity is a shield from the tyranny of the majority," that "exemplifies the purpose" of the First Amendment "to protect unpopular individuals from retaliation . . . at the hand of an intolerant society." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357

7

1  (1995) (holding that an "author's decision to remain anonymous, like other decisions concerning

2  omissions or additions to the content of a publication, is an aspect of the freedom of speech protected

3  by the First Amendment"). Courts must "be vigilant . . . [and] guard against undue hindrances to

4  political conversations and the exchange of ideas." *Buckley*, 525 U.S. at 192. This vigilant review

5  "must be undertaken and analyzed on a case-by-case basis," where the court's "guiding principle is

6  a result based on a meaningful analysis and a proper balancing of the equities and rights at issue."

7  *Dendrite Int'l, Inc.*, 775 A.2d at 761.

8       The principles protecting anonymous speech have been extended to the internet and

9  electronic communications. *Reno v. ACLU*, 521 U.S. 844, 870 (1997) (there is "no basis for

10  qualifying the level of First Amendment protection that should be applied to" the internet). Indeed,

11  this fundamental right enjoys the same protections whether the context for speech and association

12  is an anonymous political leaflet, an internet message board, or a video-sharing site. *Id.*; *see also,*

13  *e.g., Doe v. 2themart.com*, 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001) (stating that the internet

14  promotes the "free exchange of ideas" because people can easily engage in such exchanges

15  anonymously).

16       Here, Twitter uses the internet to allow individuals to communicate about themselves,

17  communicate with other people, and engage in discussions about a broad range of private and public

18  issues. *See, generally*, http://www.twitter.com. As Twitter uses the internet to facilitate this

19  discourse, the right to anonymous speech extends to communications made through Twitter. *See*

20  *id.*; *Reno*, 521 U.S. at 870; *2themart.com*, 140 F. Supp. 2d at 1093. Because the First Amendment

21  protects the right to speak anonymously, this right extends to electronic communications, and

22  Twitter provides a means for people to communicate through electronic and internet

23  communications; any discovery seeking to pierce online anonymity by obtaining the identities of

24  anonymous speakers on Twitter is subject to a qualified privilege.[3] *See, e.g., Sony Music Entm't v.*

25  *Does 1–40*, 326 F. Supp. 2d 556, 563 (S.D.N.Y. 2004) ("[c]ourts have held that civil subpoenas

26  seeking information regarding anonymous individuals raise First Amendment concerns.").

27  _____

28  [3] A court order, even if granted to a private party, is state action and hence subject to constitutional limitations. *See, e.g., N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964).

Case No. 3:21-mc-80166-KAW        **RENEWED NTC OF MTN AND MTN TO COMPEL TWITTER; MPA**

8

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1  Consequently, courts must consider this qualified privilege and public policy before authorizing

2  discovery in cases such as this. *Id.*

3        **B.**      **Development of Standards for Determining When to Pierce Anonymity.**

4        Courts nationwide have adopted various standards for interpreting and applying the qualified

5  privilege associated with online anonymity when confronted with efforts to pierce such anonymity

6  through discovery devices. When addressing these issues, courts have made efforts to balance the

7  interests of the anonymous speakers against a party's need for the subpoenaed information. *See,*

8  *e.g., John Doe No. 1 v. Cahill*, 2005 Del. LEXIS 381, *23, 884 A.2d 451, 460–61 (Del. 2005);

9  *2theMart.com*, 140 F. Supp. 2d 1088, 1095; *Dendrite*, 342 N.J. Super. at 157–58, 775 A.2d at 771;

10  *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999).

11        As these courts have recognized, an inherent problem arises in such cases because, at the

12  outset of litigation, plaintiffs typically rely upon mere allegations of wrongdoing. However, a

13  privilege is generally not overcome by mere allegations. Indeed, a chilling effect on anonymous

14  speech may result if internet speakers knew they could be identified by persons who merely allege

15  wrongdoing, without having any intention of carrying through with actual litigation. *See, e.g.,*

16  *Seescandy.com*, 185 F.R.D. at 578 ("People who have committed no wrong should be able to

17  participate online without fear that someone who wishes to harass or embarrass them can file a

18  frivolous lawsuit and thereby gain the power of the court's order to discover their identity."); *see*

19  *also 2theMart.com*, 140 F. Supp. 2d at 1093 ("If Internet users could be stripped of . . . anonymity

20  by a civil subpoena enforced under the liberal rules of civil discovery, this would have a significant

21  chilling effect on Internet communications and thus on basic First Amendment Rights. Therefore,

22  discovery requests seeking to identify anonymous Internet users must be subject to careful scrutiny

23  by the courts."). Consequently, courts have employed standards and imposed varying requirements

24  that plaintiffs must meet prior to authorizing the discovery of information identifying anonymous

25  speakers. *See, e.g., 2theMart.com*, 140 F. Supp. 2d at 1095; *Seescandy.com*, 185 F.R.D. at 578;

26  *Dendrite*, 342 N.J. Super. at 157–58; *Cahill*, 2005 Del. LEXIS 381 at *23; *Mobilisa, Inc. v. Doe*,

27  217 Ariz. 103, 112 (Ariz. Ct. App. 2007).

28  //

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

*1.     Emergence of the Cahill Standard*

In October 2005, the Delaware Supreme Court addressed the issue of the standard to be applied to determine when the disclosure of an anonymous speaker's identity could be obtained through discovery. In so doing, it thoroughly analyzed the various standards employed by other courts in similar circumstances. The *Cahill* court concluded that the most effective standard would be a synthesized version of the standard adopted in *Dendrite Int'l, Inc. v. Doe No. 3,* 342 N.J. Super. 134, 775 A.2d 756 (N.J. Super. A.D. 2001).[4]

Essentially, the standard employed by *Cahill* requires the party seeking discovery of an anonymous speaker's identity to: (a) "undertake efforts to notify the anonymous poster that he is the subject of a subpoena or application for an order of disclosure, and to withhold action to afford the anonymous defendant a reasonable opportunity to file and serve opposition to the application," and (b) demonstrate that it would survive a summary judgment motion. *Cahill*, 2005 Del. LEXIS 381 at *23, 884 A.2d at 460–461. With respect to the notification requirement, the Court held that:

> The notification provision imposes very little burden on a [] plaintiff while at the same time giving an anonymous defendant the opportunity to respond. When *First Amendment* interests are at stake we disfavor *ex parte* discovery requests that afford the plaintiff the important form of relief that comes from unmasking an anonymous defendant.

*See Id.*

The court concluded that requiring a plaintiff to demonstrate it would survive a summary judgment provides the most effective balance between a plaintiff's rights and those of the defendant anonymous speaker. *Id.* The *Cahill* opinion represented the first state supreme court opinion to address these issues. It has since been adopted by other courts. *See, e.g.,Solers, Inc. v. Doe*, 2009 D. C. App LEXIS 342, *31, 977 A.2d 941, 954 (D.C. 2009) (adopting the *Cahill* standard.).

*2.     The Mobilisa Standard*

In 2007, the Arizona Court of Appeals affirmed and adopted the summary judgment standard from *Cahill* but also required a party seeking information about an anonymous speaker to

---

[4]     *Dendrite* continues to be cited and followed. *See Independent Newspapers, Inc. v. Brodie*, 407 Md. 415, 966 A.2d 432 (Md. Ct. App. 2009).

demonstrate that the "balance of the parties' competing interests favors disclosure."[5] *Mobilisa, Inc. v. Doe,* 217 Ariz. 103, 112, 170 P.3d 712, 721 (Ariz. Ct. App. 2007). Thus, under the *Mobilisa* standard, a party seeking disclosure of information about an anonymous (or pseudonymous) individual must (a) provide notice to the anonymous individual and an opportunity to respond; (b) demonstrate that it would survive summary judgment; and (c) demonstrate that a balance of all interests would weigh in favor of disclosure. *Id.* Consequently, the *Mobilisa* standard most effectively balances the rights of all parties involved.

### 3.     The 9th Circuit Standard

In 2011, the Ninth Circuit adopted a two-part test for allowing the disclosure of an anonymous speaker's identifying information in *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975–76 (N.D. Cal. 2005). The standard essentially encompasses that set forth in *Dendrite*. In 2011, the *Highfields* standard was reenforced by the court in *Art of Living. Art of Living Found. v. Does 1–10*, No. 10-CV-05022,2011 U.S. Dist. LEXIS 129836 (N.D. Cal. Nov. 9. 2011). In addition to notice, the *Highfields* standard requires that the plaintiff first persuade the court that there is evidence that the defendant has engaged in wrongful conduct that has caused harm to the interests of the plaintiff that the laws the plaintiff has invoked were intended to protect. *Id.* at 975. If that is met, the court must then weigh the magnitude of the harms that would be caused to the competing interests by a ruling in favor of the plaintiff and by a ruling in favor of the defendant. *Id.* at 976. If relatively little harm is done to the defendant's First Amendment and privacy rights by the enforcement of the subpoena and the issuance of the subpoena is necessary to enable the plaintiff to protect against or remedy serious wrongs, the court should enforce the subpoena. *Id.* at 976.

### 4.     The Utah Standard

The Utah District Court has adopted the *Dendrite* standard in such circumstances. *Koch Indus., Inc. v. Doe*, Cause No. 2:10CV1275DAK, 2011 U.S. Dist. LEXIS 49529, *27 (D. Utah. May. 9, 2011). The *Dendrite* standard essentially requires the plaintiff to make a preliminary

---

[5]     In essence, the <u>*Mobilisa*</u> court reinstated an element of the *Dendrite* standard that *Cahill* had omitted.

11

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   showing that their complaint has merit, that the plaintiff provide notice to the defendant, and that

2   the court balance the interests of the two parties. *Dendrite Int'l, Inc. v. Doe No. 3*, 342 N.J. Super.

3   134, 775 A.2d 756 (N.J. Super. A.D. 2001). While the court in *Koch* concluded that the *Dendrite*

4   motion to dismiss standard is what they have adopted, the court also adopted a requirement that the

5   plaintiff seeking the enforcement of the subpoena show that in a hypothetical summary judgment

6   motion, the plaintiff could provide sufficient evidence to prove every element of their *prima facia*

7   case. *Koch Indus., Inc. v. Doe*, No.2:10CV1275DAK, 2011 U.S. Dist. LEXIS 49529, at *27 (D.

8   Utah. May. 9, 2011). [6] Therefore, the standard that most closely aligns with the Utah courts is the

9   *Cahill* standard.

10          **C.       The Subpoena Satisfies the Utah and 9th Circuit Standard.**

11                 *1.      The Cahill standard.*

12          In Utah, to satisfy the *Cahill* standard, the plaintiff must serve the defendant with notice of

13   the subpoena and show that the plaintiff would pass a hypothetical summary judgement standard.

14   *Koch Indus., Inc. v. Doe*, No. 2:10CV1275DAK, 2011 U.S. Dist. LEXIS 49529, at *27 (D. Utah.

15   May. 9, 2011). In Utah, when there is no genuine issue of material fact, the moving party is entitled

16   to a judgement as a matter of law. Utah R. Civ. P. 56(c). The Subpoena would easily survive

17   summary judgement.

18          If the Court grants this motion to enforce, Dr. Wirt can provide notice of the Subpoena via

19   Twitter's private message feature. However, Twitter has stated that it will provide notice to Doe

20   before responding to the Subpoena with identifying information, and Dr. Wirt agrees with this

21   course of action. (*See* Kronenberger Decl. Ex. E.)

22          The Utah Supreme Court has established that a plaintiff stating a claim for defamation must

23   show that the defendant published the statements concerning the plaintiff, the statements were false,

24   defamatory, and not subject to any privilege, the statements were published with the degree of

25   requisite fault, and the publication resulted in the damage. *See West v. Thomson Newspapers*, 872

26   _____

27   [6] The court in *Cahill* clarified that while the *Dendrite* standard facially appears to be a motion to
     dismiss standard, the "plaintiff must produce sufficient evidence supporting each element of its
28   cause of action," which appears to be more like a summary judgment standard. *Cahill*, 2005 Del.
     LEXIS 381 at *23.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    P.2d 999, 1007–08 (1994).

2          Here, Dr. Wirt pleads in his Complaint that the Defendant's comments did concern the

3    Plaintiff and specifically identify him by his Twitter handle. (*See* Kronenberger Decl. Ex. __ at

4    ¶¶44, 50.)

5          The Complaint alleges causes of action against John Doe, the account holder for the Twitter

6    handle @Deus_Abscondis for defamation per se and false light. The foundation of these claims are

7    the defamatory statements made by Doe which include several false statements, but one in particular

8    stands out wherein Doe links Dr. Wirt to a known felon who was convicted of fraud, stating "He

9    dropped the 'h'. Now it makes sense – 'In 2004, it was announced that Wirth together with one of

10   his co-workers had been arrested and later imprisoned for fraud." Doe then linked to an article about

11   the crime. (*See* Kronenberger Decl. Ex. A at ¶23.) This is a false statement of fact. (*See* Wirt Decl.

12   ¶18.)

13         The Defendant would likely contend that the statements were not published with the

14   requisite fault because he did not post them with the intent to harm Dr. Wirt, while Dr. Wirt contends

15   that posting statements as such would have no other degree of fault but to harm one's reputation.

16   Finally, the Defendant would likely contend that the statements did not cause harm to Dr. Wirt.

17   However, Dr. Wirt contends that statements by the Defendant were injurious as defamation *per se*

18   when the Defendant made false allegations of criminal conduct he purports was committed by Dr.

19   Wirt and alleged that the Dr. Wirt acted incompatibly with his profession as a physician. *World*

20   *Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1138 (10th Cir. 2006). Based on

21   the above, Dr. Wirt's claims would survive a hypothetical summary judgment motion. Because the

22   Plaintiff put the defendant on notice and would survive a hypothetical summary judgment inquiry,

23   the *Cahill* standard is satisfied, and the Court should enforce the Subpoena.

24               2.    *The Highfields Standard*.

25         The Subpoena would pass the 9th Circuit standard as well. The Court denied Dr. Wirt's

26   original motion, stating that the two prongs of the *Highfields* test were unmet by the evidence

27   submitted by Dr. Wirt. Specifically, the Court stated that Dr. Wirt must demonstrate a real

28   evidentiary basis of: (1) the requisite degree of fault required to establish defamation per se, and (2)

the existence of harm to Wirt that would outweigh the harm to @Deus_Abscondis from being identified. Dr. Wirt submits his declaration as evidence and satisfies the two prongs of the *Highfields* test.

### a.  "Real Evidentiary Basis"

In applying the *Highfields* test, Dr. Wirt can show that there is a real evidentiary basis for believing that the anonymous speaker has engaged in wrongful conduct that caused real harm to Dr. Wirt, and the balance of harms resulting from the disclosure of the anonymous speakers identifying information weigh in the Dr. Wirt's favor. *Highfields Capital Mgmt., L.P. V. Doe*, 385 F. Supp. 2d 969, 975–76 (N.D. Cal. 2005).

Based on how district courts in this District have applied the *Highfields* standard, it is clear that the balance weighs in Dr. Wirt's favor in this instance. In *Music Grp. Macao Commercial Offshore Ltd.*, the court held that the "real evidentiary basis" standard is not as demanding as the evidentiary showing in *Dendrite*, and thus, is one of middling vigor. *Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 984 (N.D. Cal. 2015). The court in *Smythe* explained that a complaint and motion that does not mention the user, does not explain how the user has defamed her and reliance on evidence that is wholly illegible is not sufficient. *Smythe v. Does*, 2016 U.S. Dist. LEXIS 1348, at **8–9 (N.D. Cal. Jan. 5, 2016). The court in *Awtry* held that evidence that is wholly speculative and relies on alleged time correlations to events that fail to the support the idea that the anonymous speaker was the one who had posted the comments is not sufficient. *Awtry v. Glassdoor, Inc*., 2016 U.S. Dist. LEXIS 44804, at **43–44 (N.D. Cal. 2016). The court in *In re Yuichiro Yusuda* held that tweets that have already been found to constitute defamation are sufficient evidence to show that the anonymous defendant engaged in wrongful conduct. *In re Yuichiro Yasuda*, 2019 U.S. Fist. LEXIS 219926, at *17 (N.D. Cal., Dec. 20, 2019).

As stated by the Court, when "the plaintiff is not a public figure, negligence is the requisite degree of fault." *John Bean Techs. Corp. v. B GSE Grp., LLC*, 480 F. Supp. 3d 1274, 1322 n.333 (D. Utah 2020). The plaintiff, in turn, "must plead facts that permit an inference that [the defendant] was at least negligent as to the truth of its statements . . . ." *Rusk v. Fid. Brokerage Servs., LLC*, Case No. 2:15-cv-853-JNP, 2018 U.S. Dist. LEXIS 55004, at *17 (D. Utah Mar. 29, 2018); *see,*

14

*also*, *Savage v. Pac. Gas & Elec. Co.*, 21 Cal. App. 4th 434, 448, 26 Cal. Rptr. 2d 305, 313 (1993) ("Thus appellant must prove that the PG & E executive intended to defame her or that PG & E was at least negligent in failing to ascertain the falsity of the statement or the existence of extrinsic circumstances making the statement defamatory.").

Here, it is clear that the Defendant was at least negligent in publishing the defamatory statements. Specifically, if Defendant had exercised reasonable diligence, he would have determined that the article was, in fact, not about Dr. Wirt. No person exercising reasonable diligence would believe the statements in the article to be about Dr. Wirt because there are no other sources that have this information out there linking the criminal activity in the article to Dr. Wirt. (*See* Wirt Decl. at ¶19.) Further, Defendant had no interest in checking the veracity of his own false statements. They were published for the sole purpose of cruelty and to harm the reputation of Dr. Wirt, as they were wholly unrelated to the original debate in which the parties were engaged. (*Id.* at ¶39.)

**b. Balance of Harm**

Here, the Complaint and Motion for Leave to Conduct Limited Discovery states the anonymous defendant. (*See* Kronenberger Decl. Exs. A and B.) The Subpoena to Twitter identifies the anonymous defendant and the claim being brought against the anonymous Defendant. (*See* Kronenberger Decl. Ex. D.) Further, the tweets themselves are sufficient evidence to show that the anonymous defendant engaged in wrongful conduct. (*See* Kronenberger Decl. Ex. A.) Unlike in *Art of Living*, the Subpoena does not attempt to extend discovery to identifying the motive, the extent of the misconduct, and the identities of who else is involved. *Art of Living Found. v. Does 1–10*, No. 10-CV-05022, 2011 U.S. Dist. LEXIS 129836, at **28–29 (N.D. Cal. Nov. 9. 2011). Further, unlike in *Awtry*, because there is a strong showing of "sufficient evidence," disclosing the identifying information of the Defendant will not have a "chilling effect" on an anonymous speaker's First Amendment right when balancing the interests of this Plaintiff and Defendant. *Awtry v. Glassdoor, Inc.*, 2016 U.S. Dist. LEXIS 44804, at *47 (N.D. Cal. 2016). In conclusion, the *Highfields* test would be satisfied, and this Court should enforce the Subpoena against Twitter to disclose the anonymous speaker's identifying information.

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

As noted above, under the law of this Circuit, the First Amendment does not protect tortious, defamatory, or libelous speech, anonymous or otherwise. *USA Techs., Inc. v. Doe*, 713 F. Supp. 2d 901, 906 (N.D. Cal. 2010); *see also In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) ("The right to speak, whether anonymously or otherwise, is not unlimited, however, and the degree of scrutiny varies depending on the circumstances and the type of speech at issue.").

Here, the anonymous speech at issue constitutes defamation *per se*. As noted by the Court, while a plaintiff may not need to establish harm to bring a defamation *per se* claim, Dr. Wirt must still identify some harm that would be greater than the harm to @Deus_Abscondis. *Compare with In re PGS Home Co.*, Case No. 19-mc-80139-JCS, 2019 U.S. Dist. LEXIS 204520, at *16 (N.D. Cal. Nov. 25, 2019) (denying discovery where the plaintiff failed to show "a 'real evidentiary basis' that the Tweets caused real harm" to the plaintiff). It is clear that Dr. Wirt's reputation has been directly impacted by the statements. The Defendant's Defamatory Statements caused Dr. Wirt to suffer damage to his reputation, credibility, and dignity. (*See* Wirt Decl. at ¶40.) Further, as noted above, Dr. Wirt was forced to actively defend himself in relation to these false accusations to third parties whom Defendant involved in the discourse, directly harming Dr. Wirt's reputation. (*Id*. at ¶41.)

Therefore, the Court should enforce the Subpoena which would reveal the identity of the anonymous speaker.

**CONCLUSION**

Based on the foregoing, Movant Daniel P. Wirt is able to satisfy the standards propagated by courts in this District and in the Ninth Circuit such that this Court is able to strike a balance between the well-established First Amendment right to speak anonymously, and the right of the plaintiff to protect its proprietary interests and reputation through the assertion of recognizable claims based on the actionable conduct of the anonymous, fictitiously-named defendants. Further, as delineated above, Dr. Wirt has agreed to narrow his Subpoena such that each of Twitter's objections has been sufficiently addressed. For the reasons articulated herein, Dr. Wirt respectfully requests that this Court compel Twitter to Respond to the Subpoena and order that Twitter produce information which would allow or aid in identifying Defendant John Doe, including the IP

Addresses from which the offending posts were made and the email, emails, or other information used by Doe when registering for his account using the handle @Deus_Abscondis.

Respectfully Submitted,

DATED: October 18, 2021                        **KRONENBERGER ROSENFELD, LLP**

By:  ___s/ Karl S. Kronenberger_____
                    Karl S. Kronenberger

Attorneys for Movant